## STATE V. FRED DEIKE.[1]

### June 6, 1919.

### No. 21,260.

**Army and navy — discouraging enlistment — verdict not sustained by evidence.**

The evidence is *held* insufficient to show a violation of chapter 463, Laws 1917, known as the Sedition Act.

Defendant was indicted by the grand jury of Redwood county for the crime of discouraging enlistment in the military and naval forces of the United States, tried in the district court for that county before Olsen, J., and a jury which found him guilty as charged in the indictment. From an order denying his motion to set aside the verdict and for a new trial, defendant appealed. Reversed.

*John A. Dalzell,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Assistant Attorney General, and *Albert H. Enerson,* County Attorney, for respondent.

HOLT, J.

Defendant was convicted under an indictment charging him with

[1]Reported in 172 N. W. 777.

having unlawfully advocated that citizens of the state should not aid or assist the United States in prosecuting and carrying on the war with Germany by speaking these words in the presence of two citizens, viz.: "The soldiers at Camp Grant (referring to one of the camps at which the United States' enlisted and selected men are now and then and prior thereto were being trained for military service) do not have anything fit to eat; they do not have any white bread, but all black bread that isn't fit for a dog to eat; that they have beans that are hard and soured; that all other American camps are the same way; I have visited three different camps this summer; that the boys in the camps are not allowed to write the truth about the matter, they are guarded; the reports we get in the American papers as to the war are not true; that I have a paper printed in Wisconsin that has the news right from the front over a wireless that the United States cannot understand; that every time 10,000 German soldiers are killed 30,000 American soldiers are killed; that the German Lutherans have control of the wireless reports."

Defendant challenged the sufficiency of the indictment by demurrer and by objection to the reception of evidence thereunder. Errors are now assigned upon the rulings sustaining the indictment and also to certain portions of the charge.

No consideration needs be given either the indictment or the court's instructions to the jury, for we have come to the conclusion that the evidence fails to show a violation of chapter 463, p. 764, Laws 1917.

That defendant spoke the words substantially as set out in the indictment must be held established by the verdict. But, taking the language at its full face value, it cannot be held that thereby is taught or advocated what is forbidden by the law mentioned. At most, it may be said that the language set out might come under the ban of the law, depending upon the circumstances under which it was used. It is not to be forgotten that this is a penal statute, and that the innocence of the accused is to be presumed, unless the words, standing alone or when considered in connection with the occasion of their use, show guilt beyond a reasonable doubt. Do the circumstances under which defendant uttered the words attributed to him warrant an inference that he taught or advocated that men should not enlist in the army or navy of the United States, or that citizens should not aid in war activities, or could his

hearers fairly so understand? The teaching and advocacy need not be direct and outspoken. Often the most perniciously effective teaching or propaganda may be carried on in veiled, insinuating, or ambiguous language, with the true meaning and sting conveyed by an artful inflection of the voice. It therefore becomes necessary to have regard for the setting under which the alleged seditious words were spoken.

Defendant's auditors were two farmers who drove up to his farm in an automobile on a Sunday morning in July, 1918. He was not acquainted with the men. They said that they came because a child of one of them, acquainted with a child of defendant who had been reported injured in an automobile accident, desired to ascertain the extent of the injury. Defendant and his wife had just returned from a trip to Illinois. On the trip they had visited Camp Grant, where defendant had a nephew in the army. At the time of their visit to the camp an entertainment or picnic was given the soldiers by the surrounding communities, and eatables were brought in by automobiles and trucks. Defendant's explanation of the remarks about the food served in the army camps was that one of the soldiers, in appreciation of the entertainment, made a speech, saying that what was provided for them was something different from the soured beans and black bread of their usual rations. However, we take it the jury accepted the version of the state's witnesses. But, even so, there is an utter lack of circumstances indicative of teaching or advocating any matter prohibited by the law under which the indictment was framed. Both of the state's witnesses admit that not a word was uttered by anyone upon the subject of enlistment, or the selective draft law, or the bond or thrift stamp drives, or the Red Cross work or any other war activity. Nor was there any discussion or questioning of the justice of our cause in the war, nor an intimation that a single effort for speedy victory should be relaxed. On this Sunday morning one of the visitors had a brother in an army camp, defendant had a son about to be sent overseas (another son was in the service at the time of the trial), and he and his wife had 17 or 18 nephews in different training camps and at the front. Defendant, a farmer, uttered not a whimper for having lost his best help in the approaching harvest. He stated to the men that he would try to get along as best he could. There is not a whisper that defendant had been disloyal in word or deed unless the words spoken on

this occasion are to be so construed. Indeed, his offer to prove his loyalty was objected to by the state and sustained. As a matter of fact, the three men indulged in the customary desultory talk that takes place at a casual meeting of a few minutes' duration.

We all know that during the continuance of this war it furnished topics for conversation wherever two or more people met. Nearly every family had one or more sons or relatives in the ranks, with more awaiting call. The food, discipline, treatment and welfare of these boys were uppermost in their hearts. Of prime interest was also the probable duration of the war, and its destruction of life and property. Information on these and kindred war matters was eagerly sought and listened to. That much of the talk would be speculation and mere wild gossip goes without saying. This applies also to newspaper reports and discussions. Some of these were no doubt as wild and fanciful as the German wireless messages heard by defendant in Chicago. But the legislature never intended by this law to deprive the citizens of the right to talk about, discuss, speculate upon, or to even criticize matters pertaining to the war. The act plainly limits the restrictions upon free speech to teaching or advocating that men should not enlist as soldiers or sailors, and that citizens should not aid in the activities commended by the government for carrying on the war. There is nothing in what defendant said, or the connection in which it was said, that can be tortured into an attempt to sway or affect the thought or conduct of his auditors on any subject, and certainly not as against enlistment or for withholding aid in the prosecution of the war. There was no gloating by defendant over the rumor or report that our losses in battle had been three times as great as that of our enemies. For aught that appears defendant was for a more vigorous prosecution of the war because of our supposed losses. Defendant may have embellished the gossip he was retailing, but the law is not directed against prevaricators.

Scarcely any conviction subjects the offender to such a severe and lasting public scorn and disgrace as falls upon the one found guilty of disloyalty to his country during the stress of war. And justly so. The consequences being so severe to one accused of an offense denounced by a statute as of a seditious or disloyal nature, he should not be convicted,

unless the evidence fairly shows the statute to have been violated. We think the evidence fails to so show in the instant case.

The order is reversed and a new trial granted.